UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WILLIE J. HARRIS, # 292201,

        Plaintiff,

v.

AMY SCOTT, et al.,

        Defendants.

Case No. 1:15-cv-550

Honorable Paul L. Maloney

# MEMORANDUM OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint arises out of conditions of his confinement in 2015 at the Ionia Correctional Facility (ICF). The defendants are Corrections Officer Amy Scott and Counselor Nakita Haynes.[1]

Plaintiff alleges that Counselor Haynes violated his First Amendment rights by filing a false Class II misconduct charge against him on May 7, 2015, and transferring him from ICF's housing unit 5 to housing unit 3 in retaliation for his activities as a unit 5 representative to the Warden's Forum. Plaintiff alleges that Officer Scott retaliated against him in violation of his First Amendment rights. He believes that Ms. Scott played some role in the issuance of the Class II misconduct and plaintiff's

---

[1]The parties have also described Ms. Haynes as an Assistant Resident Unit Supervisor (ARUS). (ECF No. 74, PageID.381; ECF No. 72-2, PageID.396). For the sake of clarity and consistency, she will be referred to herein as "Counselor" because that is the term the plaintiff used in his amended complaint. (ECF No. 6, PageID.45).

loss of his position as a housing unit 5 representative stemming from his transfer to unit 3 because Ms. Scott had allegedly threatened to transfer plaintiff two months earlier.[2] Plaintiff sues defendants in their individual capacities and he seeks an award of damages.

The matter is before the Court on defendants' motion for summary judgment. (ECF No. 73). Plaintiff opposes the motion (ECF No. 75-76). For the reasons set forth herein, defendants' motion for summary judgment will be granted and judgment will be entered in defendants' favor on all plaintiff's claims.

## Applicable Standards

A.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See*

---

[2]All other claims have been dismissed. (ECF No. 7-9).

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

B. Qualified Immunity

Defendants argue that they are entitled to summary judgment on the basis of qualified immunity. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is

distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'" *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016); *see Holsey v. Wieber*, 811 F.3d 844, 846 (6th Cir. 2016); *see also Zuhl v. Haskins*, 652 F. App'x 358, 361(6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Ziglar v. Abbasi,* 137 S. Ct. 1873, 1867 (2017) ("If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability.") (quotation and citation omitted); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the

right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted); *Mitchell v. Schlabach*, 864 F.3d 416, 424 (6th Cir. 2017). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552. In order to be clearly established, existing precedent must have placed the unlawfulness of the official's conduct "beyond debate." *Plumhoff*, 134 S. Ct. at 2023; *Mitchell*, 864 F.3d at 424.

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Estate of Hill v. Miracle*, 853 F.3d at 312 ("[T]he ultimate burden of proof is on the plaintiff to show

that the defendant is not entitled to qualified immunity.") (quotation and citation omitted). The burden applies to each claim that the plaintiff is asserting against a defendant. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

**Facts**

The following facts are beyond genuine issue. Plaintiff was classified as a Security Level V prisoner at all times relevant to this lawsuit.[3] (Plf. Dep. at 10-12, ECF No. 74-2, PageID.395). On June 5, 2014, plaintiff was transferred from the Marquette Branch Prison to the Ionia Correctional Facility (ICF). (*Id.* at 10-11, PageID.395).

Plaintiff could not remember any occasion where Corrections Officer Amy Scott wrote a misconduct ticket against him. (*Id.* at 26, 34, PageID.398-99). Plaintiff states that on March 12, 2015, Ms. Scott threatened to send him to a different ICF housing unit. (*Id.* at 27, PageID.398).

On May 7, 2015, Counselor Nakita Haynes issued a Class II misconduct charge against plaintiff for insolence. (ECF No. 74-3, PageID.407-08; Plf. Dep. at 37-38, ECF No. 74-2, PageID.399-400). Plaintiff had directed the following kite (informal complaint) to Ms. Haynes:

> Do you plan to ignore every issue I bring to your attention[? H]owever there is a suspicion that you are conspiring along with unit 5 staff to

---

[3]Level V prisoner is a classification reserved for the prison system's "most dangerous and unmanageable prisoners." *Jackson v. Stoddard*, No. 1:13-cv-1297, 2014 WL 2862614, at *1 (W.D. Mich. June 24, 2014). "Level V is the highest security level of the five-level Michigan classification system[.]" *Mays v. Gorman*, No. 1:11-cv-694, 2013 WL 504234, at *1 (W.D. Mich. Feb. 12, 2013).

destroy my outgoing and incoming mail, as well as to set me up. [H]owever none of you are above the law. Wait in [sic] see.

(ECF No. 74-3, PageID.408; Plf. Dep. at 38-39, ECF No. 74-2, PageID.400).

On May 10, 2015, Ms. Haynes transferred plaintiff from the housing unit where she worked (unit 5) to housing unit 3. (Plf. Dep. at 46, ECF No. 74-2, PageID.402). Plaintiff was transferred from one general population unit at ICF to another general population unit at the same prison with no change in his security classification level. (*Id.*). The transfer between housing units had no impact on plaintiff's ability to receive visitors or conduct his lawsuits. (*Id.* at 47-50, PageID.403). Plaintiff did lose his position as one of housing unit 5's representatives to the Warden's Forum. (*Id.* at 56, PageID.404). Plaintiff also expressed his belief that there were more security threat group (STG) members housed in unit 3 than unit 5 (*Id.* at 48, 54, PageID.402, 404), but plaintiff presented no supporting evidence regarding the inmate population of any ICF housing unit. Plaintiff did not have a work assignment when he was assigned to housing unit 5. Thus, he did not lose any such assignment when he was moved to unit 3. (*Id.* at 56, PageID.404).

On May 13, 2015, plaintiff received a hearing on the Class II misconduct charge. The hearing officer found that the "wait and see" portion of plaintiff's kite "was vague and could be interpreted by a reasonable person as a veiled threat and meant to harass and cause alarm in the reader." (ECF No. 74-4, PageID.410). The hearing officer found plaintiff guilty of the Class II misconduct and plaintiff lost privileges for thirty days, from May 15 to June 14, 2015. (*Id.*; *see also* Plf. Dep. at 39-41, ECF No.

74-2, PageID.400; ECF No. 74-5; ECF No. 74-6; ECF No. 74-7, ECF No. 74-8). Plaintiff pursued an appeal, but was not successful in having his Class II misconduct conviction overturned. (Plf. Dep. at 43-46, ECF No. 74-2, PageID.401-02).

Plaintiff believes that Officer Scott played some role in his receiving the Class II misconduct ticket and his transfer to unit 3 because she and Counselor Haynes "talk[ed] all the time." (*Id.* at 46, PageID.46). Plaintiff testified: "My belief is that she played a role in all of [those] things, I don't have evidence to say she did. I have my belief." (*Id.* at 52, PageID.403).

On June 1, 2015, plaintiff filed this lawsuit. (ECF No. 1). On August 31, 2015, he filed his amended complaint.[4] (ECF No. 6).

## Discussion

### I. First Amendment

Plaintiff alleges that defendants retaliated against him in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the

---

[4]On March 28, 2016, plaintiff was transferred to the Baraga Correctional Facility. (Plf. Dep. at 11, ECF No. 74-2, PageID.395). On June 5, 2017, plaintiff filed a notice of change of address advising the Court that he is currently an inmate at ICF. (ECF No. 80).

protected conduct. *Thaddeus-X*, 175 F.3d at 394. Plaintiff has the burden on all three elements. *See Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Plaintiff presented no evidence in support of his belief that Corrections Officer Amy Scott played a role in his transfer to housing unit 3 or the issuance of the Class II misconduct ticket.[5] Plaintiff has not presented evidence on which any reasonable trier of fact could find in his favor on his First Amendment claims against defendant Scott.

Plaintiff's retaliation claims against defendant Haynes falter on the first element. Plaintiff's kite (informal complaint) to Counselor Haynes as a unit 5 representative on the Warden's Forum was not constitutionally protected conduct. Participation in the Warden's Forum is not protected conduct. *See Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004); *Vandiver v. Martin*, 48 F. App'x 517, 519-20 (6th Cir. 2002); *see also Cross v. Cook*, No. 2:13-cv-318, 7731447, at *2-3 (W.D. Mich. Oct. 28, 2015); *Brown v. Brooks*, No. 2:14-cv-122, 2014 WL 3577311, at *4-5 (W.D. Mich. July 21, 2014). Further, the use of language that violates prison rules is not protected conduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *Turner v. Gilbertson*, No. 2:17-cv-65, 2017 WL 1457051, at *9 (W.D. Mich. Apr. 25,

---

[5]Nothing improper can be inferred from the fact that defendants Scott and Haynes "talk[ed] all the time." (Plf. Dep. at 46, PageID.402). Plaintiff estimated that there were approximately 150 to 175 Level V male prisoners housed in ICF's unit 5. (*Id.* at 14, PageID.396). Thus, it hardly surprising that two female MDOC employees working in such a dangerous environment where they are vastly outnumbered by inmates remained in close contact with each other.

2017); *accord, Bey v. Finco*, No. 1:13-cv-798, 2016 WL 4697836, at *5 (W.D. Mich. Sept. 8, 2016).

Plaintiff also falls short of presenting evidence sufficient to raise a genuine issue of fact for trial on the adverse action element. Plaintiff had no constitutional right to be housed in any particular unit at ICF or to remain as one of the unit's representatives to the Warden's Forum. *See Vandiver v. Martin*, 48 F. App'x. at 520-21. A brief loss of privileges pursuant to a Class II misconduct conviction is not adequate to support the adverse action element. *See Ingram v. Jewell*, 94 F. App'x. 271, 273 (6th Cir. 2004); *Jennings v. Bennett*, No. 1:17-cv-555, 2017 WL 3712176, at *10-11 (W.D. Mich. Aug. 29, 2017); *Patterson v. Godward*, No. 2:08-CV-78, 2012 WL 652470, at *4 (W.D. Mich. Feb. 28, 2012), *aff'd*, 505 F. App'x. 424 (6th Cir. 2012). The loss of a position as one of the unit's representatives is not an adverse action. *See Annabel v. Frost*, 14-10244, 2015 WL 1322306, at *5 (E.D. Mich. Feb. 17, 2015); *Brown v. Brooks*, No. 2:14-cv-122, 2014 WL 3577311, at *5 (W.D. Mich. July 21, 2014). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). "A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001); *Colvin v. Foy*, No. 1:13-cv-465, 2014 WL 1154658, at *4 (W.D. Mich. Mar.

21, 2014). Plaintiff remained a Level V prisoner during his confinement and transfer from one general population ICF housing unit to another general population housing unit was not an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. *See Merriweather v. Jenkins*, No. 2:11-cv-459, 2012 WL 3929903, at *4 (W.D. Mich. Aug. 14, 2012); *see also Moore v. Smith*, No. 1:13-cv-881, 2017 WL 1217786, at *9 (W.D. Mich. Mar. 3, 2017).

Plaintiff likewise falls short on the third element of his retaliation claims. He has not presented evidence on which a reasonable trier of fact could find that any adverse action by defendant Haynes was motivated, in least in part, by plaintiff's protected conduct.

## II. Qualified Immunity

Defendants are also entitled to qualified immunity. They are entitled to qualified immunity on the first prong of the qualified immunity analysis for the reasons stated in the previous section.

Defendants are entitled to qualified immunity on the second prong of the qualified immunity analysis as well because plaintiff has not carried his burden of proving that at the time each defendant acted, existing precedent placed the statutory or constitutional question "beyond debate." *Plumhoff*, 134 S. Ct. at 2023. Plaintiff cites four cases in support of his argument that "the elements of a First Amendment retaliation claim [were] well established" in 2015 when the defendants took the actions forming the basis of plaintiff's claims. (Plaintiff's Brief at 4, ECF No. 75, PageID.474). Suffice it to say that none of the four cases cited by plaintiff involved a kite sent by a

prisoner as a unit representative that ended with a "wait and see" statement, which led to the issuance of a Class II misconduct charge, subsequent conviction, and a 30-day loss of privileges. The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201). The determination whether a particular right was clearly established must not be made at a high level of generality. *See White v. Pauly*, 137 S. Ct. at 552; *Mitchell*, 864 F.3d at 424.

Plaintiff has not presented clearly established law that he was engaging in protected conduct when he sent a kite that could reasonably be interpreted as a threat. In addition, none of the actions complained of by plaintiff were so clearly adverse that existing precedent at the time each defendant acted placed the unlawfulness of the official's conduct "beyond debate." *Plumhoff*, 134 S. Ct. at 2023; *Mitchell*, 864 F.3d at 424; *see also*, *Good v. Heyns*, No. 15-12064, 2017 WL 3446262, at *3-4 (E.D. Mich. May 25, 2017) (defendants entitled to qualified immunity on retaliation claim because it was not clearly established that punishment for a Class II misconduct conviction was sufficiently adverse to support a retaliation claim); *Cross v. Cook*, 2015 WL 7731447, at *2-4 (defendant entitled to qualified immunity on claim of retaliation based on prisoner's activities as a unit representative to the Warden's Forum); *Dye v. DeAngelo*, No. 09-14545, 2010 WL 4982925, at *5 (E.D. Mich. Nov. 4, 2010) (defendants entitled

to qualified immunity on retaliation claim where prisoner was transferred to a prison at the same security level).

## **Conclusion**

For the reasons set forth herein, defendants' motion for summary judgment will be granted and judgment will be entered in defendants' favor on all plaintiff's claims.


Dated:   September 25, 2017              /s/ Paul L. Maloney
                                         Paul L. Maloney
                                         United States District Judge